# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CONRAD ZDZIERAK,                                    Case No. 1:12-cv-386
      Petitioner,

                                         Spiegel, J.
      vs.                                            Litkovitz, M.J.

WARDEN, CORRECTIONAL                        **REPORT AND**
RECEPTION CENTER,                           **RECOMMENDATION**
      Respondent.


Petitioner, an inmate in state custody at the Chillicothe Correctional Institution in Chillicothe, Ohio, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition and respondent's return of writ.[1] (Docs. 1, 7).

In brief, petitioner's convictions and sentence stem from a series of robberies that occurred on March 5, 2010 and April 9, 2010. (Doc. 7, Plea Transcript p. 3). Based on the statement of facts presented at petitioner's change of plea hearing, petitioner robbed the Chaco Credit Union, Key Bank, Fifth Third Bank, Franklin Savings Bank, and CVS Pharmacy in Hamilton County, Ohio. *Id.* at 3-5. During the robberies petitioner demanded money either by threatening that he had a gun or by handing the employee a note. *Id.* at 5-6.

## I. PROCEDURAL HISTORY

### State Trial Proceedings

On May 23, 2010, the Hamilton County, Ohio grand jury returned an eighteen-count indictment charging petitioner with six counts of aggravated robbery, six counts of robbery, and

---

[1] The Court notes that petitioner has also filed a motion to withdraw his petition (Doc. 10) and a motion to amend the withdrawal motion to instead seek a stay and abeyance of these habeas corpus proceedings (Doc. 12), both of which are opposed by respondent. (Docs. 11, 13). In light of the findings of this Report and Recommendation, petitioner's motions were denied as moot by separate order issued on this date.

six counts of having weapons while under disability. (Doc. 7, Ex. 1). On April 30, 2010, petitioner entered a not guilty plea to all charges. (Doc. 7, Ex. 2).

On May 12, 2010, defense counsel for petitioner moved the trial court to have petitioner evaluated to determine whether he was competent to stand trial. (Doc. 7, Ex. 3). After ordering an evaluation, the trial court determined that petitioner was competent to stand trial. (Doc. 7, Ex. 4, 5, 6). On November 29, 2010, petitioner waived his right to be tried by a jury, withdrew his former not guilty plea, and entered a guilty plea to one count of aggravated robbery and five counts of robbery. (Doc. 7, Ex. 7, 8). The trial court accepted petitioner's guilty plea and dismissed the remaining charges. (Doc. 7, Ex. 9, 10). Prior to sentencing, the trial court ordered another psychiatric examination of petitioner. (Doc. 7, Ex. 11). On January 14, 2011, the trial court issued a judgment entry sentencing petitioner to a total aggregate sentence of twenty five years in the Ohio Department of Corrections. (Doc. 7, Ex. 12).

## Direct Appeal

On February 4, 2011, petitioner, through new counsel, filed a timely notice of appeal to the Ohio Court of Appeals. (Doc. 7, Ex. 13). Petitioner presented the following three assignments of error for the court's consideration:

1. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY ACCEPTING HIS GUILTY PLEA, AS IT WAS NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY ENTERED, AND WAS OBTAINED IN VIOLATION OF A DUE PROCESS RIGHTS (sic) UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION SIXTEEN OF THE CONSTITUTION OF THE STATE OF OHIO.

   ISSUE PRESENTED FOR REVIEW AND ARGUMENT:
   When the defendant has serious and documented mental problems and was not fully advised by counsel, the defendant cannot make a constitutionally valid plea.

2. THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL

2

COUNSEL WHEN COUNSEL FAILED TO FULLY EXPLAIN THE PLEA CONSEQUENCES AND TO WITHDRAW THE PLEA PRIOR TO SENTENCING.

ISSUE PRESENTED FOR REVIEW AND ARGUMENT:
When defense counsel fails to fully explain the consequences of the plea, and to withdraw the plea when it was obvious it was not intelligently made, the defendant receives ineffective assistance.

3. THE DEFENDANT-APPELLANT WAS DENIED DUE PROCESS OF LAW AND SUBJECT TO CRUEL AND UNUSUAL PUNISHMENT WHEN THE COURT SENTENCED HIM TO 25-YEARS.

ISSUE PRESENTED FOR REVIEW AND ARGUMENT:
Where the court gives what amounts to a life in prison for a mentally ill defendant, it is cruel and unusual punishment and does not correlate to the sentencing statutes.

(Doc. 7, Ex. 13A).  On May 2, 2011, petitioner filed a motion for leave to file a pro se supplement to his appellate brief.  (Doc. 7, Ex. 14).  The Ohio Court of Appeals overruled petitioner's motion to supplement his appeal on May 18, 2011.  (Doc. 7, Ex. 15).  On September 28, 2011, Ohio appellate court the found petitioner's assignments of error without merit and affirmed the judgment of the trial court.  (Doc. 7, Ex. 17).

**Ohio Supreme Court**

On November 2, 2011, petitioner filed a timely pro se notice of appeal and memorandum in support of jurisdiction with the Ohio Supreme Court.  (Doc. 7, Ex. 18, 10).  In his memorandum in support of jurisdiction, petitioner presented the following three propositions of law:

1. The trial court erred to the prejudice of Appellant by accepting his guilty plea, as it was not knowingly, intelligentl[y], and voluntarily entered, and was obtained in violation of a Due Process Rights (sic) under the Fourteenth Amendment to the United States Constitution and Article One, Section Sixteen of the Constitution of the State of Ohio.

2. The Defendant received ineffective assistance of trial counsel when counsel failed to fully explain the plea consequences and to withdraw the plea prior to

3

sentencing.

3. The Defendant-Appellant was denied Due Process of Law and subject to cruel and unusual punishment when the court sentenced him to 25 years.

(Doc. 7, Ex. 19).  On February 1, 2012, the Ohio Supreme Court denied petitioner leave to

appeal and dismissed the appeal "as not involving any substantial constitutional question."  (Doc.

7, Ex. 21).

## Federal Habeas Corpus

Petitioner initiated the instant federal habeas corpus action on May 18, 2012.  (Doc. 1).

In the petition, petitioner raises three grounds for relief:

**Ground One:**  The Ohio State Courts erred in sentencing Petitioner to maximum and consecutive terms of twenty-five years which amounts to cruel and unusual punishment and against the sentencing proportionality and consistency in light of the United States Supreme Court decision in <u>Oregon v. Ice</u>, 555 US 160 (2009) and it's progeny.

**Ground Two:**  The Trial Court erred by accepting Petitioner's guilty plea, given his mental state and lack of understanding, as it was not knowing, intelligent, or voluntarily entered and was obtained in violation of his due process rights.

**Ground Three:**  The Petitioner received ineffective assistance of trial counsel when counsel failed to fully explain the plea consequences or see that Petitioner did not fully understand the plea or the court proceedings.

 (Doc. 1, Memorandum pp. 6, 11, 13).

On July 31, 2012, in response to the petition, respondent filed a return of writ arguing

that petitioner's grounds for relief are without merit.  (Doc. 7).

After requesting an extension of time to reply to the return of writ, petitioner filed a

motion to withdraw his petition on September 17, 2012.  (Doc. 10).  Respondent filed a response

in opposition on September 21, 2012.  (Doc. 11).

Petitioner next filed a motion to amend his motion to withdraw his petition.  (Doc. 12).

Therein, petitioner asks that the Court stay his petition so that petitioner can exhaust a newly

4

discovered claim pertaining to the voluntariness of his plea in the Ohio courts.  Specifically, petitioner claims that his due process rights were violated when the trial court accepted his guilty plea to aggravated robbery.  According to petitioner, the record indicates that petitioner did not have a handgun during the commission of the robberies and that the trial court failed to comply with statutory requirements requiring the court to identify the essential elements of the charges against him and to ensure that a factual basis exists to support those charges prior to accepting a guilty plea.

Respondent filed a motion in opposition to petitioner's motion.  (Doc. 13).  Respondent contends that petitioner has already exhausted his ground for relief claiming that his guilty plea was not voluntary and that the claim is meritless.  *See id.*

## IV.    THE PETITION SHOULD BE DENIED

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by plaintiff to the state courts is set forth in 28 U.S.C. § 2254(d).  Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v.*

*Taylor,* 529 U.S. 362, 412-13 (2000)), *cert. denied,* 132 S.Ct. 1743 (2012).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet.  *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards.  *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court).  It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . .  This is a "substantially higher threshold.". . .  To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original).  The Supreme Court recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d).  *See Johnson v. Williams*, __ U.S. __, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves

authority to issue the writ in cases where there is no possibility fairminded jurists could disagree

that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct.

at 786.  In other words, to obtain federal habeas relief under that provision, the state prisoner

must show that the state court ruling on the claim presented "was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Id.* at 786-87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim

under § 2254(d), the federal habeas court must apply the Supreme Court precedents that

controlled at the time of the last state-court adjudication on the merits, as opposed to when the

conviction became "final." *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte,* 654

F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a

claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases

already decided at the time the state court made its decision").  As the Supreme Court  explained

in *Greene*:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. ___, 131 S.Ct. 1388, 179
> L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that
> was before the state court that adjudicated the prisoner's claim on the merits.  We
> said that the provision's "backward-looking language requires an examination of
> the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398.  The
> reasoning of *Cullen* determines the result here.  As we explained, § 2254(d)(1)
> requires federal courts to "focu[s] on what a state court knew and did," and to
> measure state-court decisions *as of 'the time the state court renders its decision*.'"
> *Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .;
> emphasis added).

132 U.S. at 44.

Decisions by lower courts are relevant "to the extent [they] already reviewed and

interpreted the relevant Supreme Court case law to determine whether a legal principle or right

had been clearly established by the Supreme Court."  *Otte*, 654 F.3d at 600 (quoting *Landrum v.*

*Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011)).  The writ may

issue only if the application of clearly-established federal law is objectively unreasonable "in

light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of

the relevant state court decision."  *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing

*Williams,* 529 U.S. at 412).

**A.  Ground One of the petition is not cognizable and without merit.**

In Ground One, petitioner contends that the trial court erred by sentencing petitioner to

maximum and consecutive terms.  (Doc. 1, Memorandum pp. 6-11).  First, petitioner claims that

because the trial court failed to make required judicial findings of fact prior to sentencing, the

consecutive terms of imprisonment imposed in his case were improper in light of the Supreme

Court's decision in *Oregon v. Ice*, 555 U.S. 160 (2009).  Petitioner also argues that his sentence

amounts to cruel and unusual punishment under the Eighth Amendment.

As background, prior to *Ice,* the Ohio Supreme Court had ruled in *State v. Foster,* 845

N.E.2d 470 (Ohio 2006), that portions of Ohio's sentencing statutes, including the provision

requiring the trial judge to make certain findings before imposing consecutive sentences, violated

the defendant's Sixth Amendment right to a jury trial under the Supreme Court's decision in

*Blakely v. Washington,* 542 U.S. 296 (2004).  To remedy the constitutional defects, the *Foster*

court severed the unconstitutional provisions and held, among other things, that the trial court

had "full discretion" to impose consecutive prison terms without making findings or giving

reasons for its decision.  *Foster,* 845 N.E.2d at 497-99.  Nearly three years later, in *Ice*, the

Supreme Court upheld the constitutionality of Oregon's sentencing statute, which like Ohio's

pre-*Foster* statute, required the trial judge to make factual findings prior to imposing consecutive

sentences.  In so ruling, the Court reasoned that the imposition of consecutive sentences does not

implicate constitutional concerns under the Sixth Amendment.  *See Ice*, 555 U.S. at 167-69.

In this case, petitioner essentially contends that the Supreme Court's ruling in *Ice* effectively mandated reinstatement of the pre-*Foster* provisions requiring judicial fact-finding, which were never repealed by the Ohio General Assembly.  Therefore, it is petitioner's position that the trial court erred by failing to make the specified findings of fact before imposing the consecutive prison terms during sentencing.

As a threshold matter, given that the Supreme Court explicitly held in *Ice* that the imposition of consecutive sentences does not implicate constitutional concerns under the Sixth Amendment, petitioner's claim challenging the consecutive sentences imposed in this case raises a state-law issue only, which does not give rise to a cognizable ground for federal habeas relief. In *Ice*, the Supreme Court emphasized that the choice whether to impose sentences consecutively or concurrently is a matter that has historically rested "exclusively" with the sentencing judge and, moreover, that "the prevailing practice" of judges has been the "imposition of consecutive, rather than concurrent, sentences."  *Ice*, 555 U.S. at 168-69.  Although the *Ice* Court recognized that legislatures in states like Ohio and Oregon subsequently enacted "statutory protections meant to temper the harshness of the historical practice" favoring consecutive sentences, the Court also made it clear that the state-created protections do not trigger constitutional concerns, but rather fall within the "authority of States over the administration of their criminal justice systems," which "lies at the core of their sovereign status."  *Id.* at 169-70.  Indeed, as the Supreme Court further stated in pertinent part:

> *All agree that a scheme making consecutive sentences the rule, and concurrent*
> *sentences the exception, encounters no Sixth Amendment shoal.*  To hem in States
> by holding that they may not equally choose to make concurrent sentences the
> rule, and consecutive sentences the exception, would make scant sense.  Neither
> *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000),] nor our Sixth Amendment
> traditions compel straitjacketing the States in that manner.

*Id.* at 171 (emphasis added).

In this federal habeas case, the Court has jurisdiction to review petitioner's claim only to the extent that petitioner challenges his confinement based on an alleged violation of the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Wilson v. Corcoran,* __ U.S. __, 131 S.Ct. 13, 16 (2010) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). Because habeas review is limited to claims implicating federal concerns, this Court lacks jurisdiction to consider petitioner's claim to the extent that petitioner contends that he was entitled to fact-findings by the sentencing court under Ohio's pre-*Foster* sentencing statute. *Cf. Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993) (holding that a claim challenging the state prisoner's aggregate prison sentence "involves a matter of state law," which "is not cognizable in a federal habeas corpus proceeding").

In any event, the Ohio Supreme Court's decision in *State v. Hodge,* 941 N.E.2d 768, 770 (Ohio 2010) undermines petitioner's argument that he was denied due process when the sentencing court failed to apply the pre-*Foster* sentencing provisions governing consecutive sentencing in light of *Ice*. In *Hodge*, the state's highest court explicitly ruled that *Ice* did not revive Ohio's pre-*Foster* consecutive-sentencing statutory provisions and, therefore, "trial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences unless the General Assembly enacts new legislation requiring that findings be made." *Hodge*, 941 N.E.2d at 777.

In addition, petitioner is unable to prevail on any claim that he was denied due process because post-*Ice* amendments to Ohio's sentencing statute have retained the pre-*Foster* excised

provisions, thereby reviving the requirement of judicial fact-finding before consecutive sentences may be imposed.  The Ohio Supreme Court made it clear that such an argument is unavailing when it reversed, on the authority of *Hodge*, an appellate court decision holding that the Ohio General Assembly had reenacted the pre-*Foster* provision when it amended the statute on April 7, 2009, and that therefore "a sentencing judge, pronouncing a sentence after April 7, 2009, must again, as before *Foster*'s release, make certain findings of fact before imposing consecutive sentences on a defendant."  *See State v. Jordan,* 943 N.E.2d 565, 566 (Ohio 2011), *reversing* No. 2009-T-0110, 2010 WL 4215705, at *3-4 (Ohio Ct. App. Oct. 22, 2010); *see also State v. Dohm,* No. 2009-L-076, 2011 WL 861159, at *5 (Ohio Ct. App. Mar. 11, 2011), *appeal dismissed*, 949 N.E.2d 1005 (Ohio 2011).  As an Ohio intermediate appellate court explained in following the Ohio Supreme Court's ruling in *Jordan* in an analogous case, "only an affirmative reenactment of the excised sentencing provisions will cause their revival," and "the mere act of reprinting those sections as part of amendments to other provisions does not constitute such a reenactment." *State v. Ruby*, No. S-10-028, 2011 WL 4424295, at *7 (Ohio Ct. App. Sept. 23, 2011).

This Court "must defer to and is bound by the Ohio Supreme Court's rulings in *Hodge* and *Jordan* 'as defining state law' governing post-*Foster* consecutive sentencing decisions."  *See Mittower v. Warden, Chillicothe Corr. Inst.*, No. 1:10-cv-750, 2011 WL 7719697, at *5-6 (S.D. Ohio Oct. 18, 2011) (Litkovitz, M.J.) (Report & Recommendation) (in rejecting a habeas petitioner's "cause" argument for excusing a procedural default, which allegedly stemmed from the Supreme Court's intervening *Ice* decision, the court reasoned that it was bound by the Ohio Supreme Court's decisions in *Hodge* and *Jordan*, which "undermines any argument by petitioner that the pre-*Foster* provisions apply to him"), *adopted*, 2012 WL 1340314 (S.D. Ohio Apr. 17, 2012) (Spiegel, S.J.).  Therefore, petitioner is unable to prevail on any claim that he was denied

11

due process in this case.  *Cf. Ahmed v. Hall*, No. 1:09-cv-624, 2011 WL 2970945, at *3-4 (N.D. Ohio July 20, 2011) (adopting a Report and Recommendation to deny a motion to amend a habeas petition to add a claim challenging the imposition of consecutive sentences under *Foster* in light of *Ice*, after finding the Ohio Supreme Court's *Hodge* decision "[m]ost damaging to Ahmed's dependency upon *Ice* to support his entitlement theory").

Finally, petitioner has not demonstrated that he is entitled to relief based on his claim that his sentence amounted to cruel and unusual punishment under the Eighth Amendment. Petitioner's sentence does not constitute cruel and unusual punishment because the individual sentences for each offense fall within the statutory maximums under the Ohio sentencing statute.[2]  *See Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000).  The Constitution does not mandate proportionate sentences, *see Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), and "only an extreme disparity between crime and sentence offends the Eighth Amendment."  *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).  "Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole."  *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995) (citing *Solem v. Helm,* 463 U.S. 277 (1983); *Rummel v. Estelle,* 445 U.S. 263 (1980); *United States v. Dumas,* 934 F.2d 1387 (6th Cir. 1990)).  Petitioner's sentences fell within the statutory penalties for aggravated robbery and robbery and therefore did not run afoul of the Eighth Amendment.

Accordingly, the undersigned concludes that petitioner's state law claim challenging the imposition of consecutive sentences in the absence of judicial fact-finding is not cognizable in this habeas proceeding.  In addition, petitioner has not demonstrated that the sentences imposed in this case for aggravated robbery and robbery trigger constitutional concerns under the Eighth

---

[2]  At the time of petitioner's sentencing, aggravated robbery, a felony of the first degree, carried a sentence of three to ten years imprisonment.  Robbery, a felony of the third degree, carried a sentence of one to five years imprisonment.  *See* Doc. 7, Plea Transcript pp. 13-15.

Amendment or the Fourteenth Amendment's Due Clause.  Therefore, petitioner is not entitled to habeas relief based on Ground One of the petition.

> **B.  Ground Two is without merit.**

In Ground Two, petitioner argues that his guilty pleas were obtained in violation of his due process rights.  (Doc. 1, Memorandum pp. 11-13).  Specifically, petitioner argues he did not understand the charges or the consequences of entering his guilty plea due to his psychological state at the time.  On this basis, he claims his plea was not knowingly, voluntarily, and intelligently entered.  *Id.*

The Fourteenth Amendment's Due Process Clause guarantees that a guilty plea must be made voluntarily and intelligently with sufficient awareness of the relevant circumstances and likely consequences.  *Boykin v. Alabama,* 395 U.S. 238, 242 (1968); *see also Brady v. U.S.,* 397 U.S. 742, 748 (1970); *King v. Dutton,* 17 F.3d 151, 153 (6th Cir. 1994).  "[A] plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O'Grady,* 312 U.S. 329, 334 (1941)).  In *Brady,* the Supreme Court adopted the following standard for determining the voluntariness of a guilty plea:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady,* 397 U.S. at 755 (quoting *Shelton v. United States,* 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), *rev'd on other grounds,* 356 U.S. 26 (1958)).  The voluntariness of a guilty plea must

be assessed in light of all the relevant circumstances surrounding the plea.  *Brady,* 397 U.S. at

749; *King,* 17 F.3d at 153 (and cases cited therein).

      For a guilty plea to be deemed voluntarily entered with a "sufficient awareness of the

relevant circumstances and likely consequences," the defendant must be correctly informed of

the maximum sentence that could be imposed.  *King,* 17 F.3d at 154; *Hart v. Marion Corr.*

*Instit.,* 927 F.2d 256, 259 (6th Cir. 1991).  Although the defendant must be apprised of such

"direct consequences" of the plea, the court is under no constitutional obligation to inform the

defendant of all the possible "collateral consequences" of the plea.  *King,* 17 F.3d at 153; *see*

*also El-Nobani v. United States,* 287 F.3d 417, 421 (6th Cir. 2002).  "When a defendant

subsequently brings a federal habeas petition challenging his plea, the state generally satisfies its

burden by producing a transcript of the state court proceeding."  *Garcia v. Johnson*, 991 F.2d

324, 326 (6th Cir. 1993).  As the Supreme Court noted in *Blackledge v. Allison,* 431 U.S. 63

(1977):

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the
> guilty plea hearing], as well as any findings made by the judge accepting the plea,
> constitute a formidable barrier in any subsequent collateral proceedings. Solemn
> declarations in open court carry a strong presumption of verity. The subsequent
> presentation of conclusory allegations unsupported by specifics is subject to
> summary dismissal, as are contentions that in the face of the record are wholly
> incredible.

*Id.* at 73-74 (internal citations omitted).

      Petitioner challenged the voluntariness of his guilty plea on direct appeal.  In overruling

the assignment of error the Ohio Court of Appeals found the claim to be without merit:

> In his first assignment of error, Zdzierak asserts that his guilty pleas were not
> knowingly, intelligently, and voluntarily entered.  Prior to accepting Zdzierak's
> guilty pleas, the trial court conducted a Crim.R. 11(C) colloquy.  Zdzierak
> contends that his pleas were not made knowingly, intelligently, and voluntarily,
> because he was on mood-stabilizing medication at the time of the plea hearing.
> But during the plea hearing, Zdzierak told the court that he was taking medication

> to stabilize his mood, but that the medication did not inhibit his understanding. Zdzierak also also argues that his presentence investigation revealed serious psychological issues that indicated that his pleas had not been entered knowingly, intelligently, and voluntarily.  But the court had found Zdzierak competent to stand trial.  And the record demonstrates that Zdzierak understood the proceedings and the implications of his pleas.  The first assignment of error is without merit.

(Doc. 7, Ex. 17, pp. 1-2).

The undersigned finds that petitioner has failed to demonstrate that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of Supreme Court precedent. A review of the record shows that petitioner's guilty plea was voluntary, intelligent, and was entered after being fully informed of his constitutional rights.

During petitioner's plea hearing, petitioner indicated that he understood that his guilty pleas constituted a complete admission of guilt and that he was subject to the maximum penalty associated with the charges by virtue of the pleas.  (Doc. 7, Plea Transcript p. 8).  Petitioner further affirmed that he received a copy of the indictment and the Court reviewed the charges brought against him, the possible penalties associated with those charges, and the possibility that his sentences could be ordered to run concurrently or consecutively.  *Id.* at 12-15.  Although there was some discussion as to how post-release control would be administered if petitioner was deported, petitioner indicated he understood the "gist of it."  *Id.* at 17-21.

With regard to petitioner's mental health, petitioner informed the trial court that he was taking Gabapentin for the treatment of nerve pain and as a mood stabilizer, but that the medication did not in any way inhibit his understanding of the proceedings.  *Id.* at 10-11.  His trial attorney stated that it was his belief that petitioner understood the proceedings and that the medication did not have an impact on his ability to do so.  *Id.* at 12.  Further, the court notes that petitioner was evaluated and found to be competent on two occasions, including once prior to

15

entering his guilty pleas.[3]  (*See* Doc. 7, Ex. 5, 6, 7, 11).

The trial court also reviewed the constitutional rights that petitioner would waive by entering his guilty pleas.  Petitioner indicated that he understood that he had a right to a jury trial, that the state was required to prove that he was guilty beyond a reasonable doubt, that his attorney could subpoena witnesses to testify on his behalf, that his attorney could cross-examine witnesses testifying against him, and that he could not be forced to testify against himself.  *Id.* at 23-26.  Petitioner indicated that he understood and he was voluntarily giving up those rights.  *Id.* at 26.  Finally, petitioner affirmed that he understood the contents of the plea form, that he read and understood the meaning of it, and that he had signed the plea form of his own free will.  *Id.* at 26-27.

Based on petitioner's responses, the trial judge made the following findings:

THE COURT: Well, let the record reflect that the defendant, Mr. Conrad Zdzierak was present in court with his attorney, Mr. Chris McDowell.  And that he was informed of all of his Constitutional rights, has made a knowing, intelligent and voluntary waiver of those rights.

Zdzierak, you understand the nature of the charges, the effect of the pleas as well as the maximum penalties which can be imposed.

Finding it to be voluntary, the Court will accept the plea. . . .

*Id.* at 29.

As reasonably determined by the Ohio Court of Appeals, the record in this case indicates

---

[3] Prior to sentencing the trial court also asked defense counsel, Mr. McDowell, if he would like to challenge the plea on the basis of the pre-sentencing report.  Trial counsel stated that there was no concern regarding petitioner's capacity to stand trial:

MR. MCDOWELL:  No, Your Honor.  I've spoken to both the Court appointed psychiatrist and [Dr.] Nizny, no one implicates that he's incompetent to stand trial.

Everyone does believe, while he has mental issues, he is competent to enter a plea and stand trial and proceed with these proceedings today.

(Doc. 7, Sentencing Transcript p. 35).

16

that petitioner understood the change of plea proceedings and the implications of entering his guilty pleas.  Petitioner has thus failed to demonstrate that his plea was involuntary, unintelligent, or entered without being fully informed of his constitutional rights.

In petitioner's motion to stay his habeas petition, petitioner contends that his guilty plea to aggravated robbery was involuntary because he was not informed that he had to physically have a gun in his possession in order to commit the crime of aggravated robbery.  (Doc. 12, p. 4).  Petitioner claims that although the state's allegations charged him with carrying a gun "it was later revealed (on the date of sentencing) that petitioner, in fact, did not have a gun, but allegedly, based upon the state[']s position, threatened to use a gun, either verbally or through a note."  (Doc. 10, p. 2).[4]

Petitioner's arguments do not change the undersigned's determination that his plea to aggravated robbery was entered voluntarily with full knowledge of the nature of the charges against him.  As noted above, during the plea hearing petitioner affirmed that he received a copy of the indictment, which charged that in purposefully committing or attempting to commit a theft offense, petitioner "had a deadly weapon on or about his person or under his control, and displayed, brandished, indicated possession or used the deadly weapon, to wit: A HANDGUN."  (Doc. 7, Ex. 1, p. 2).  In addition, prior to accepting petitioner's plea, the trial court had the prosecution read a statement of facts, which included that the following factual allegations and exchange:

> MR. PIEPMEIER:   Your Honor, the first offense, the aggravated robbery, occurred on March 5, 2010, in Hamilton County, State of Ohio.

---

[4] Petitioner directs the Court to the following comment made by petitioner's counsel during his sentencing hearing:

> As you know, we've discussed, Your Honor, he did not have a firearm with him when he committed these offenses, nor was anyone harmed during the commission of these offenses, physically harmed.

(Doc. 7, Sentencing Transcript pp. 36-37).

> On that date, in committing a theft offense, that being U.S. currency belonging to the Chaco, C-H-A-C-O, Credit Union, the defendant had a deadly weapon on or about his person; to wit: a hand gun.
>
> With reference to Count 5 - -
>
> THE COURT:  Excuse me.  Is there a firearm specification here?
>
> MR. PIEPMEIER:  No there's not.  There isn't one in the indictment.
>
> THE COURT:  All right.
>
> MR. PIEPMEIER:  Count 5 - - but the charge itself contains the allegation that he did have a firearm on or about his person.

(Doc. 7, Plea Transcript pp. 3-4).  Furthermore, petitioner affirmed that he understood that by virtue of entering the plea he was making a complete admission of guilt to these allegations and that he waived the right to have the prosecution prove his guilt on each element of the offenses with which he was charged.  *Id.* at 24.  Therefore, petitioner's contention that he was uninformed of the nature of the aggravated robbery charge or reasonably remained unaware of the allegation that he had a firearm during the commission of the robbery is not supported by the record.[5]

Finally, to the extent that petitioner claims that he is entitled to habeas relief because the trial court failed to develop a factual basis for his guilty plea, his claim is without merit.  "[T]he requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution, but rather a requirement created by rules and statutes."  *United States v. Tunning,* 69 F.3d 107, 111 (6th Cir. 1995); *see also Barber v. United States*, No. 2:07-cv-792, 2008 WL 5111187, at *11 (S.D. Ohio Dec. 2, 2008) (Report and Recommendation) ("unlike Rule 11 of the Federal Rules of Criminal Procedure, the United States Constitution does not require the development of a factual basis for a guilty plea, and the

---

[5] For this reason, there is no basis for granting petitioner's motion for stay and abeyance (Doc. 12) as petitioner has not shown that this unexhausted claim is potentially meritorious. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005).  *See also Hodge v. Haeberlin*, 579 F.3d 627, 638 (6th Cir. 2009).

lack of such development will not provide a basis for federal habeas corpus relief") (citing *Meyers v. Gillis*, 93 F.3d 1147, 1151 (3rd Cir. 1996)), *adopted*, 2009 WL 604187 (S.D. Ohio Mar. 9, 2009).   Therefore, petitioner has failed to state a cognizable claim to the extent that he claims he is entitled to habeas relief based on the trial court's failure to develop a factual basis for his guilty plea.

Accordingly, petitioner has failed to demonstrate that the Ohio Court of Appeals' decision finding that his guilty pleas were entered voluntarily, knowingly, and intelligently was contrary to or an unreasonable application of Supreme Court precedent.   After a review of the record the undersigned finds that petitioner's claims in Ground Two, including those raised in his motion to stay his habeas petition, are without merit.   Therefore petitioner is not entitled to habeas relief based on Ground Two of the petition.

### C.  Ground Three is without merit.

In Ground Three, petitioner contends that his trial counsel was ineffective for failing "to fully explain the plea consequences or see that Petitioner did not fully understand the plea or the court proceedings."  *Id.* at 13-15.

In overruling the assignment of error on direct appeal, the Ohio Court of Appeals found the claim without merit:

> Zdzierak asserts in his second assignment of error that he was denied the effective assistance of counsel.  To prevail on this assignment of error, Zdzierak must demonstrate that his counsel's performance was deficient and that, absent his counsel's errors, the result of the proceedings would have been different.  See *State v. Bradley* (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373; *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052.  Zdzierak claims that his counsel's performance was deficient because counsel did not properly explain Zdzierak's pleas to him and because counsel did not move to withdraw Zdzierak's pleas when the extent of his psychological problems was uncovered in the presentence investigation.  But as we discussed above, the record demonstrates that Zdzierak entered his pleas knowingly, intelligently, and voluntarily.  He did not dispute that he committed the offenses to which he pleaded guilty.  We

conclude that Zdzierak has not demonstrated that his counsel's performance was deficient.  The second assignment of error is overruled.

(Doc. 7, Ex. 17, p. 2).

The Supreme Court precedent setting forth the clearly-established federal legal principles applicable to the case at hand is *Strickland v. Washington,* 466 U.S. 668 (1984).  In order to demonstrate that counsel's performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result.  *Id.* at 687.  Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *Id.* at 688.  "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."  *Harrington,* 131 S.Ct. at 787 (citing *Strickland*, 466 U.S. at 689).  Under the prejudice prong of the *Strickland* test, petitioner must show "a reasonable probability that, but for his counsel's unprofessional errors, the result of the criminal proceedings would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding."  *Id.* (citing *Strickland,* 466 U.S. at 694).  A court may dispose of an ineffective assistance of counsel claim by finding that petitioner made an insufficient showing on either ground.  466 U.S. at 697.

In this case, petitioner has failed to demonstrate that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of the *Strickland* standard.  Petitioner's ineffective assistance claim is premised on his claim that his guilty plea was not voluntary, knowing, and intelligently entered.  Because the Ohio appellate court reasonably determined that

petitioner's claim challenging his guilty pleas was without merit, the court also reasonably determined that counsel was not ineffective for failing to raise the meritless claim. *United States v. Martin*, 45 F. App'x 378, 381-82 (6th Cir. 2001) ("Failure of trial counsel to raise wholly meritless claims cannot be ineffective assistance of counsel.") (citing *Strickland*, 446 U.S. at 686-87). Accordingly, petitioner is not entitled to relief based on Ground Three of the petition.

Accordingly, in sum, the undersigned concludes that the Ohio Court of Appeals' adjudication of petitioner's constitutional claims challenging his guilty pleas, conviction and sentence was neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court. Petitioner has not shown that "fairminded jurists could disagree" that the Ohio Court of Appeals' adjudication of the constitutional issues raised in the petition conflicts with the relevant Supreme Court precedents or "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Harrington*, 131 S.Ct. at 786-87. Therefore, petitioner is not entitled to relief based on the claims alleged in the petition.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date:   8/16/2013                         s/Karen L. Litkovitz
                                          Karen L. Litkovitz
                                          United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CONRAD ZDZIERAK,                    Case No. 1:12-cv-386
       Petitioner,

                                       Spiegel, J.
      vs.                           Litkovitz, M.J.

WARDEN, CORRECTIONAL
RECEPTION CENTER,
       Respondent.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).